## COMEAU v. HURLEY et al.

In an action against a sheriff and his deputy to recover the value of live stock seized under an execution against plaintiff's father, evidence held sufficient to justify a verdict finding plaintiff was the owner thereof.

Where the evidence is conflicting, the Supreme Court will not weigh it, or go farther than to determine therefrom whether the winning party gave sufficient legal evidence to sustain the verdict, disregarding the evidence for the losing party, except as it also tends to sustain the verdict.

In an action against a sheriff for the value of plaintiff's live stock seized under an execution against his father, in which it appeared that the father had executed a bill of sale to another son for certain live stock only a few days prior to the seizure in question, the court properly excluded a question to plaintiff as to why there was put into such bill of sale a clause that all the property was to remain in the possession of the father and brother with the right to take absolute possession at any time, as plaintiff was not a party to such transaction, and not having been shown to have any knowledge of the bill of sale or its contents.

In an action for the value of live stock seized under an execution against plaintiff's father, wherein it was claimed by plaintiff that the stock levied on was his share of stock purchased by his father for plaintiff and his brothers, who with their mother managed the homestead without the assistance of their father, who had turned over the business of carrying on the farm to them, giving them all the proceeds, one of plaintiff's brothers was permitted to answer a question as to what was the agreement between them as to the amount to be paid by each of them on the balance of the mortgage given by the father on the stock. **Held** proper, witness having testified that there was a division of the stock between the brothers and mother, and that there was a balance unpaid on the purchase price thereof; and hence it was competent to show that, when the stock was divided, provision was made for the balance due on the purchase of the same, as it was a part of the transaction which plaintiff claimed resulted in his becoming sole owner of the stock in controversy, and bore directly on the question of good faith, and was admissible as part of the res gestae.

Evidence that personal property was assessed to an alleged seller, and not to the alleged buyer, for many years after the sale, is inadmissible to show fraud.

A party cannot complain of the court's refusal to permit a witness to answer a question, where it appears that the witness otherwise fully testified as to the matter inquired about.

Where a witness is unable to state whether a mortgage included personal property, title to which was in dispute, there was no error in sustaining an objection to a question as to how much the mortgage was for.

An exception "to each and every part of the charge" is insufficient to present any question for review.

In an action against a sheriff for the value of plaintiff's live stock seized under execution against his father, a requested instruction that if the jury found that the bill of sale of property including that in controversy was made by plaintiff's father, and by him delivered to another son without consideration, such transfer could not avail plaintiff, and the verdict must be for defendants, was properly refused, as plaintiff did not claim title under such bill, and defendants acquired no title or right to levy on the property by

reason thereof; the theory of the case being based on the assumption that it was null and void.

There is no error in the refusal of special instructions, where the instructions given fairly and fully instructed the jury on all questions properly arising in the case.

The right to recover for property seized on execution against plaintiff's father was not affected by the fact that his brother made a claim to the sheriff for property which included that in question, where there is nothing to show that plaintiff knew of or acquiesced in such claim.

(Opinion filed, Nov. 17, 1909.)

Appeal from Circuit Court, Potter County. Hon. CHAS. S. WHITING, Judge.

Action by William Comeau against Solon P. Hurley and another. From a Judgment for plaintiff, defendants appeal. Affirmed.

See, also, 22 S. D. 79, 310, 115 N. W. 521; 117 N. W. 371.

D. J. O'Keefee and Henderson & Fribourg, for appellants. S. M. Howard, C. J. Brower, and J. H. Bottom, for respondent.

CORSON, J. This action was instituted by the plaintiff, a minor, by his guardian ad litem, to recover the value of certain live stock alleged to have belonged to him, seized under an execution issued upon a judgment by Selzer Bros., recovered against the father of the plaintiff and sold thereunder. Verdict and judgment being in favor of the plaintiff, the defendants have appealed.

In similar actions brought by brothers of the plaintiff against the same defendants, who were the sheriff and deputy sheriff of Potter county, and reported in 22 S. D. 79 and 310, 115 N. W. 521 and 117 N. W. 371, the facts are so fully stated that a brief summary only will be necessary for the purpose of understanding the points presented by appellants in the case at bar. On the trial evidence was introduced tending to prove: That in 1897 the father, M. A. Comeau, settled upon a homestead in Potter county; that he was engaged in the business of contractor, and was at home only at intervals of two or three months, when he remained but a day or two, for several years thereafter; that he turned over his business of carrying on the farm to his five sons and wife, giving to them all the proceeds arising from the said

farm; that the five sons and their mother attended to the farming business, and from the proceeds of the farm and outside labor supported the family without any assistance from the father; that in 1899 the father, at the request of his sons, purchased a bunch of 59 head of live stock for them, giving his own individual note, and securing the payment of the same by a chattel mortgage; that the same were kept and cared for by the five boys, including the plaintiff, and sales made therefrom, and the money arising from such sales was used in paying the note and mortgage executed by the father, except a balance of about $350; that said balance has been paid by the sheriff; that no part of said original mortgage has been paid by the father; that, soon after making said sales and paying the amount upon the note and mortgage as above stated, the remaining portion of the live stock was divided among the five sons and the mother, each taking his or her proportionate share, and each agreeing to pay $50, upon the balance of the note and mortgage executed by the father; that two of the older sons took their share of the live stock from the farm; that the balance remained upon the farm until the same was seized and sold under the judgment against the father before referred to; that, at the time of the division of the live stock, new brands were placed on a part of the stock and increase assigned to each of the five brothers and the mother.

It is contended by the appellants that the live stock so seized and sold by the defendants upon the judgment against the father, M. A. Comeau, was his property at the time of the levy and sale, and that the plaintiff was not the owner of the same. The jury, however, found by their verdict that the plaintiff was the owner of the stock claimed by him.

It is contended by the appellants that the evidence was insufficient to justify the verdict; but this contention is untenable, as the evidence on the part of the plaintiff was clearly sufficient to justify the verdict of the jury, notwithstanding there was a conflict in the evidence. This court has uniformly held that: "Where in a case tried before a jury the evidence is conflicting, this court will not weigh the evidence, or go farther than to determine therefrom whether or not the party has given sufficient legal evidence

to sustain his verdict, without regard to the evidence given on the part of the other party, except so far as such evidence tends to sustain the same." Jeansch v. Lewis et al., 1 S. D. 609, 48 N. W. 128; Comeau v. Hurley, 22 S. D. 79, 115 N. W. 521. Some five days prior to the seizure of the property by the defendants under the judgment above referred to, the father executed a bill of sale to his son Walter for certain live stock, and in this bill of sale was the clause referred to in the following question: "Do you know why Mr. Comeau, there was put in the bill of sale Exhibit 2, the provision to the effect that all of that property was to remain in the possession of your father and Walter with the right to take absolute possession at any time when he would feel like doing it?" The question was objected to, and the objection sustained by the court. The ruling of the court was clearly correct, as the plaintiff was not a party to that transaction, and there was no evidence tending to show that he had any knowledge of the bill of sale or of its contents, and he cannot be presumed to know the motives of the parties in inserting that clause in the bill of sale.

It is further contended that the court erred in permitting the witness Ed. Comeau to answer the question: "What was the agreement between you as to the amount to be paid by each of you on the $300 (balance of mortgage)?" The ruling of the court was clearly proper, as the witness had testified there was a division of the live stock between the brothers and mother, and that there was a balance of $300 remaining unpaid on the purchase of that stock. It was competent and proper therefore to show that, when the live stock was divided, provision was made as to the amount each should contribute to pay the balance due on the purchase of the same, as it was a part of the transaction which the plaintiff claimed resulted in his becoming sole owner of the stock in controversy, and bears directly upon the question of good faith, and is inadmissible as a part of the res gestae. Tenney v. Evans, 14 N. H. 343; Crump v. U. S. Mining Co., 7 Grat. (Va) 352, 56 Am. Dec. 116; Wetmore v. Mell, 1 Ohio St. 26.

It is further contended by the appellants that the court erred in refusing to permit the defendants to introduce the assessment

roll and various proceedings connected therewith tending to show that the property was assessed to M. A. Comeau, the father, for the year 1905, and several preceding years; but we are of opinion that the court committed no error in sustaining the plaintiff's objections to the assessment rolls and statements of the assessor and auditor, as it clearly appears that the plaintiff was not personally assessed, and that he made no statement in regard to the property, and it was not shown that he had any knowledge of these assessments, or the manner in which they were made. Evidence that personal property was assessed to an alleged vendor, and not to the alleged vendee, for many years after the sale, is inadmissible to show fraud in the sale. This disposes of assignment of errors 12, 13, 14, 15, 16, and 17.

It is further contended by the appellants that the court erred in refusing to permit the witness Hughes, called as a witness for the defendants, who was the president of the bank, and at whose suggestion the bill of sale was made by the father to Walter Comeau, to answer the question: "Do you remember, Mr. Hughes, on or about the 24th day of May, 1905, certain transactions with M. A. Comeau relating to a bill of sale by him to his son Walter of certain stock and other property?" This question was objected to, and it appears from the record that the objection was sustained; but it appears from the abstract that: "Mr. Fribourg: At this time defendants offer to prove by witness Hughes that M. A. Comeau, the father of one Walter Comeau, and of the plaintiff in this action, executed and delivered to the said Walter Comeau, with full knowledge of the plaintiff, a bill of sale of certain personal property, including the property in controversy in this action, and that thereafter the plaintiff, William Comeau, consented to and agreed and acquiesced in the making and execution and delivery of said bill of sale." Thereafter the witness testified as follows: "When the bill of sale was first talked of, it was with Walter Comeau alone, who came in and wanted to borrow some money, and the talk we had that day resulted in the giving of this bill of sale from Walter's father to Walter. I am not positive as to what incumbrance there was on this property mentioned in the bill of sale at the time it was

given; but my opinion is that there was a little balance on the mortgage due; but I cannot say without going to the record. I do not remember having answered at the other trial that there was a mortgage of $500, November 7, 1904; but, if I answered it that way, it is straight all right. I refer to the records in the bank. * * * I do not remember in a general way what that mortgage of $500 of November 7, 1904, covered; but I remember it was on live stock, and the mortgage was given by M. A. Comeau. Q. And to refresh your recollection further, Mr. Hughes, don't you remember that I asked you this question, 'On these same cattle and horses mentioned in this bill of sale substantially?' and you answered, 'I should say so; yes, sir.' * * * I remember of a chattel mortgage that was given by M. A. Comeau to me in November, 1902." It would seem therefore that the witness was permitted to testify as to the transaction resulting in the giving of this bill of sale and the chattle mortgage, so that practically the question was answered by the witness, notwithstanding the objection was apparently sustained. The witness was then asked the following question: "Q. How much was that mortgage for, Mr. Hughes?" This was objected to, and the objection sustained. The witness proceeded: "I cannot tell you anything about what property was covered. I can give you the dates of the mortgages and the dates they were taken up, and everything except the description of the property." It will be observed therefore that the witness was unable to state what property was covered by the mortgage, and consequently, as the witness was unable to state whether or not the property mortgaged included the property claimed by the plaintiff, the evidence was clearly incompetent and inadmissible, and the court committed no error in sustaining the objection to the same.

The appellants further contend that the court erred in its charge to the jury, but, as no specific exception was taken to any particular part or portion of the charge, the alleged error in the charge cannot be considered; the exception being as follows: "And the defendants duly excepted to each and every part of the foregoing instructions at the time they were by the court given to the jury." In a former case of Comeau v. Hurley et al.,

117 N. W. 371, this court held that a general exception was insufficient to preserve the right to review, following the decisions of this court in Banbury v. Sherin, 4 S. D. 88, 55 N. W. 723, and Calkins v. Seaberry-Calkins Consol. Min. Co., 5 S. D. 299, 58 N. W. 797, and this seems to be the settled rule of appellate courts.

It is further contended by the appellants that the court erred in refusing to give the following instruction requested by the defendants to the jury: "If you find that on the 24th day of May, 1905, a bill of sale of personal property including the property in controversy was made by M. A. Comeau and by him delivered to Walter Comeau, and that at the time said bill of sale was so made, executed, and delivered, no consideration therefor passed from M. A. Comeau to Walter Comeau, then the said transfer cannot avail the plaintiff in this action, and your verdict must be for the defendants." This instruction was properly refused, for the reason that plaintiff was not claiming any title to the property thereunder, and the defendants acquired no title or right to levy upon the property by reason of said bill of sale, and the theory of their case was based upon the assumption that said bill of sale by M. A. Comeau to Walter Comeau was null and void, and the conclusion in the requested instruction that, the transfer from M. A. Comeau to Walter Comeau being void, the jury must find for the defendant, is clearly erroneous. As before stated, as the plaintiff claimed nothing under that bill of sale, it was not material to him whether it was valid or invalid, as it did not in any manner affect his rights.

It is further contended by the appellants that the court erred in refusing to give the following instruction to the jury requested by the appellants: "A statute provides that 'every transfer of personal property other than a thing in action or a ship or cargo at sea or in foreign port, and' every lien thereon other than mortgage when allowed by law, is conclusively presumed, if made by a person having at the time the possession or control of the property and not accompanied by an immediate delivery and followed by an actual and continuing change of things transferred, to be fraudulent, and, therefore, void against

those who are his creditors while he remains in possession and the successors in interest of such creditors and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers and incumbrancers in good faith subsequent to the transfer.' This means, in effect, that any transfer of personal property by a person in possession thereof, unless accompanied by immediate delivery and accompanied by possession, is fraudulent, conclusively presumed to be fraudulent against' creditors of the person giving the mortgage or bill of sale. So that if you find that M. A. Comeau was the owner of the property in controversy at the time he made the bill of sale, and if you further find from the evidence that the plaintiff, William Comean, at this time disavows this bill of sale and claims the property under the old ownership, which he says he had in it, you are to take that into consideration when you arrive at a conclusion as to whether or not William Comeau was the owner of any of the stock described in the bill of sale." The refusal to give the above instruction did not constitute prejudicial error, even assuming it to be correct, as the court in its charge to the jury substantially embodied this instruction in such charge. The court therein states: "If you fail to find from a fair preponderance of the evidence that the property involved in this action was the property of this plaintiff in this action on the 3d day of June, 1905, then your verdict must be for the defendants. If you find that a bill of sale of the property involved in this action was made by M. A. Comeau to his son Walter Comeau, and that said bill of sale was acquiesced in by the plaintiff herein, then these are circumstances which you should consider in determining who was the owner of this property at the time of the making, execution, and delivery of said bill of sale. * * * But if the sheriff has levied upon property which was not the property of M. A. Comeau, and you should so find, or you should find it was the property of somebody else, for instance, Walter, you must find in this action for the defendants, because the plaintiff cannot recover for any wrongful levy upon property of any person other than himself. * * * And if you should so find that regardless of any agreement that they made among

themselves, or regardless of all they may have done, that the real ownership of this property was in the father, then your verdict must be for the defendants." The court in another part of its charge calls the attention of the jury to the fact of the execution of the bill of sale by Comeau to Walter, a few days prior to the levy of the execution, and also to the fact that the plaintiff was not assessed for the property claimed by him, and that the same was included in the assessment made to the father, M. A. Comeau, as circumstances the jury should take into consideration in finding their verdict; and the court especially charges them that if the property claimed by the plaintiff was in fact the property of M. A. Comeau, the father, or Walter, the son, then he could not recover. The court further instructed the jury as follows: "The defendant claims that William Comeau was not the owner of this property. First, his claim is that, even under the evidence as given here, taking it all to be true, the original agreement was such that no title to this property was to pass from the father until the property was fully paid for. If that was the agreement, and you should so find, and that this property never had been fully paid for, then the defendants must recover."

It will thus be seen that the instructions of the court were as favorable to the defendants as the facts disclosed by the record would warrant, and that it practically covered all the ground suggested by the defendants in the special instructions requested by them, and an inspection of the charge shows that the court very fairly and fully instructed the jury upon all the questions properly arising in the case.

It is further contended by the appellants that Walter Comeau, in making a claim to the sheriff for the property, included the property also claimed by the present plaintiff, and that the plaintiff acquiesced in that claim, and therefore is not entitled to recover in this action; but the claim made by the defendants is not sustained by the evidence. So far as the record discloses, there is no evidence showing that the plaintiff knew what claim was made by Walter, or that he acquiesced in such claim, and consequently his rights are not in any manner affected by such claim so made by Walter.

There are a number of other questions presented in the brief of counsel which have not been overlooked by us; but in our opinion they do not possess sufficient merit to warrant a separate discussion.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.

WHITING, J., taking no part in the decision.