**Chandlor E. SHIPPY and Judy Shippy, Plaintiffs and Appellees,**

v.

**Jack and Ruthann HOLLOPETER and Fred and Christine Miller, Defendants and Appellants.**

**No. 13058.**

Supreme Court of South Dakota.

Argued Jan. 13, 1981.

Decided April 8, 1981.

---

* Counsel on appeal did not represent appellant at the trial.

Dale F. Benson of Willoughby & Benson, Burke, and Charles Rick Johnson of Johnson, Johnson & Eklund, Gregory, for plaintiffs and appellees.

J. M. Grossenburg of Day, Grossenburg & Whiting, Winner, for defendants and appellants.

FOSHEIM, Justice.

Defendants appeal from a judgment in favor of plaintiffs declaring a prescriptive easement and granting damages against defendants Hollopeter. We affirm in part and reverse in part.

Plaintiffs own the Southwest ¼ of the Northeast ¼ and the Southwest ¼ of Section Eleven, Township 96, Range 75, West Fifth PM in Tripp County. Defendants Hollopeter own the Northwest ¼ and defendants Miller own the Northwest ¼ of the Southeast ¼ of Section Eleven. Plaintiffs claim a right-of-way easement by prescription across the land of each defendant at the center of the section. The parallel passageway included two separate triangular tracts of land which, by the configuration of the fence, have been included in the Shippy unit during the memories of present witnesses.

Hollopeter Land
(NW¼-11-96-75, Tripp Co., S.D.)

Shippy Land
(SW¼NE¼-11-96-75, Tripp Co., S.D.)

Easement Line →

Easement Dis.
Hollopeter
Land

15'9"

←— 12'10" —→  ←—13'6" —→

(Post)
Center of
Section 11,
Twp. 96, R. 75

Easement Dis.
Miller
Land

Easement Line

18'3"

Shippy Land
(SW¼-11-96-75, Tripp Co., S.D.)

Miller Land
(NW¼SE¼-11-96-75, Tripp Co., S.D.)

The tracts owned by plaintiffs have been in common ownership since 1913, while the Hollopeter and Miller land has always been otherwise owned. From approximately 1913 to 1978, there had been an access gate in the corner where the Southwest ¼ of the Northeast ¼ and the Southwest ¼ of Section Eleven touch. In 1978, Mrs. Lillie Teel, plaintiffs' predecessor in interest, offered the land both to plaintiffs and to defendants Hollopeter. Plaintiffs were the successful purchasers. Defendant Jack Hollopeter then removed the passageway fences and gate and installed a conventional corner fence. This denied plaintiffs access to the Southwest ¼ of the Northeast ¼ except across Hollopeter or Miller land. "No tres-

passing" signs in this area simultaneously appeared.

It seems to be accepted that, at some point in time prior to 1958, an easement by prescription ripened to create the passageway in favor of plaintiffs' predecessors in interest. Defendants claim, however, that the servitude was extinguished by disuse by the owner for a period of ten years. SDCL 43–13–13 reads:

A servitude acquired by enjoyment is extinguished by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment.

The cross-reference noted at SDCL 43–13–13 states: "Period for acquiring title by enjoyment, § 15–3–15." SDCL 15–3–15 [1]

1. SDCL 15–3–15 reads:
   Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall have

continued for ten successive years in such possession, and shall also during said time have paid all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the

relates to the acquisition of real property by actual possession under claim of title and payment of taxes for a period of ten years. There is no evidence that plaintiffs' predecessors in interest ever paid the taxes on the land burdened by the servitude under any claim or color of title.

In *Shearer v. Hütterische Bruder Gemeinde*, 28 S.D. 509, 134 N.W. 63 (1912), we held that an easement by prescription requires continuous enjoyment for the period of the statute of limitations governing actions for the recovery of real property which, in this state, is twenty years.[2] We confirmed that in *Kougl v. Curry*, 73 S.D. 427, 44 N.W.2d 114 (1950). *See also: Heezen & Steele v. Aurora County*, 83 S.D. 198, 157 N.W.2d 26 (1968). It is clear, as the memorandum opinion of the trial court indicates, that the prescriptive easement in this case ripened with a substantial enclosure under the twenty-year provisions of SDCL 15–3–1 and SDCL 15–3–13(1).[3] Plaintiffs' predecessors in interest thus held title by prescription pursuant to SDCL 43–14–2.[4] It follows that the period of non-use necessary to extinguish was also twenty years. *See* 25 Am.Jur.2d Easements and Licenses § 106 (1966).

It appears that while the trial court and counsel acknowledged the easement to have ripened under the twenty-year provisions, the erroneous cross-reference at SDCL 43–13–13 seemingly led them to tie the required period of non-use to the ten-year provision of SDCL 15–3–15. The trial court did not formally find, but correctly noted, that the testimony of Mrs. Teel and another witness provided substantial evidence that the right-of-way had been used by the owners within the past twenty years. That failure, however, is not fatal as to that issue. The trial court found that the right-of-way between the tracts "had been used within the past ten years." That finding was supported by evidence. Mrs. Teel testified that she had not used the gate for over fourteen years, but that a tenant, Stanley Bicek, had used the gate. Other evidence indicated that Stanley Bicek rented the isolated tract in 1974. Thus, we cannot say that the trial court clearly erred in finding that less than a total non-use for ten of the past twenty years kept the easement alive and well. *See Groshean v. Dillmont Realty Co.*, 92 Mont. 227, 12 P.2d 273 (1932); *McMorran Milling Co. v. Pere Marquette Ry. Co.*, 210 Mich. 381, 178 N.W. 274 (1920); 25 Am.Jur.2d Easements and Licenses § 105 (1966).

Defendants urge that an abandonment of the right-of-way was established because plaintiffs used alternate means of moving hay stacks and farm machinery on both sides of the passageway. The use of a

---

legal owner of said lands or tenements to the extent and according to the purport of his paper title. All persons holding under such possession by purchase, devise, or descent before said ten years shall have expired, and who shall have continued such possession and payment of taxes as aforesaid so as to complete said term of ten years of such possession and payment of taxes, shall be entitled to the benefit of this section.

**2.** Possession of successive occupants, however, can be tacked together to make up the required continuity. *Walker v. Sorenson*, 64 S.D. 143, 265 N.W. 589 (1936); *Labore v. Forbes*, 59 S.D. 12, 238 N.W. 124 (1931). Conversely, an interruption in possession defeats the requirement of continuity. *Judd v. Meoska*, 76 S.D. 537, 82 N.W.2d 283 (1957).

**3.** SDCL 15–3–1 reads:

No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within twenty years before the commencement of such action.

SDCL 15–3–13(1) reads in pertinent part:

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, or judgment, or decree, land shall be deemed to have been possessed and occupied in the following cases only:

(1) Where it has been protected by a substantial inclosure[.]

**4.** SDCL 43–14–2 reads:

Occupancy for the period prescribed by any law of this state as sufficient to bar an action for the recovery of property, confers a title thereto denominated a title by prescription, which is sufficient against all.

substituted way may be evidence of abandonment of the original way. *See*: 25 Am. Jur.2d Easements and Licenses § 105 (1966); Annot., 25 A.L.R.2d 1265, § 13 (1952). This, however, is not conclusive of non-use. The mere use of a new right-of-way will not extinguish the old. There must also be an abandonment by non-use of the old right-of-way. *Miller v. Southard*, 38 S.D. 477, 162 N.W. 146 (1917).

■ Whether the trial court judicially expanded the existing prescriptive easement is next argued. The extent of the servitude is determined by the nature of the enjoyment by which it was acquired. SDCL 43–13–5 and SDCL 15–3–12.[5] In 1978, defendant Jack Hollopeter removed a fence bordering the passageway without measuring or preserving a record of the location of the fence. In April of 1979, plaintiff Chandlor Shippy, with witnesses, made measurements from the corner post set by Mr. Hollopeter at the center of the section to the post holes and other remaining signs of the removed fence in an attempt to reconstruct the location of the right-of-way boundaries as they previously existed.

■ There was testimony that the width of the right-of-way actually used was less than that found by the trial court. There is however, no evidence that the plaintiffs' measurements, which were adopted by the trial court, were inaccurate. The burden of establishing the incorrectness of the findings rests on defendants. *Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964). We cannot conclude that the finding of the trial court was clearly erroneous. SDCL 15–6–52(a). *Cuka v. Jamesville Hutterian Mutual Socie-*

ty, 294 N.W.2d 419 (S.D. 1980); *State Highway Commission v. Foye*, 87 S.D. 206, 205 N.W.2d 100 (1973); *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179 N.W.2d 15 (1970).

■ Defendants next dispute the award of damages for crop loss. The trial court found that plaintiffs took possession of their property on March 1, 1979, and were promptly ordered to stay off defendants' land. On May 14, 1979, defendants Hollopeter stipulated to allow plaintiffs access to the isolated tract, and on May 22, 1979, the trial court formally granted plaintiffs access to the tract. Plaintiffs were thus prevented by delay from cropping the forty acres in 1979, except to mow hay. There was evidence indicating an actual loss of approximately $1,000.00. The trial court allowed damages of $700.00 and then applied treble damages.

The actions of defendants Hollopeter were a clear signal to plaintiffs not to use the servitude. The trial court was justified in finding a forcible exclusion. The actual damage was the detriment caused by the wrongful occupation of the servitude, SDCL 21–3–5,[6] which was properly measured by the loss of profits arising from the wrongful exclusion and interruption of plaintiffs' right to plant and harvest crops on the isolated tract. *Kowing v. Williams*, 75 S.D. 454, 67 N.W.2d 780 (1954); *Cf. Lien v. Northwestern Engineering Co.*, 73 S.D. 84, 39 N.W.2d 483 (1949). The finding of actual damages was therefore appropriate.

■ SDCL 21–3–6[7] allows a person forcibly excluded from the possession of his real property to recover treble damages in an

---

5.  SDCL 43–13–5 reads:

    The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired.

    SDCL 15–3–12 reads:

    Where it shall appear that there has been an actual continued occupation of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment, or decree, the premises so actually occupied, and not other, shall be deemed to have been held adversely.

6.  SDCL 21–3–5 reads:

    The detriment caused by the wrongful occupation of real property, in cases not embraced

in §§ 21–3–6 to 21–3–9, inclusive, is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years next preceding the commencement of the action or proceeding to enforce the rights to damages, and the costs, if any, of recovering the possession.

7.  SDCL 21–3–6 reads:

    For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to him by the act complained of.

action against the wrongdoer. Where there is a forcible exclusion within the contemplation of that statute, the question of good or bad faith cannot affect the right to treble damages. *Kowing v. Williams*, supra. When, however, the wrongdoer holds possession of the property under a claim of right, he is not liable for treble damages. *Baldwin v. Bohl*, 23 S.D. 395, 122 N.W. 247 (1909). Defendants were the record owners in fee of the land burdened with the servitude. A valid and unsettled issue existed with respect to whether that servitude was extinguished. If it had been extinguished, the exclusion of plaintiffs, if not neighborly, would have been legal. Since defendants held possession of the footage under a claim of right, the treble damage statute does not apply.

We have reviewed the remaining issue urged by appellant and find it to be without merit.

The judgment of the trial court is affirmed except with regard to treble damages. The treble damages award is reversed.

All the Justices concur.